UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEVI CHURCHES,

                Plaintiff,

v.

ADMINISTRATION SYSTEMS
RESEARCH, CORPORATION,
INTERNATIONAL and CSM
GROUP, INC.,

                Defendants.

_____/

Civil Action No. 22-13041

David R. Grand
United States Magistrate Judge[1]

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO AFFIRM THE PLAN ADMINISTRATOR'S DENIAL OF BENEFITS (ECF Nos. 30, 31), AND GRANTING PLAINTIFF'S MOTION TO REVERSE ADMINISTRATOR'S DECISION (ECF No. 32)

Plaintiff Levi Churches ("Churches") brings this action under 29 U.S.C. § 1132(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") to recover benefits allegedly owed to him under a Health Benefit Plan (the "Plan") established by defendant The CSM Group, Inc. ("CSM"), and administered by defendant Administration Systems Research, Corporation International ("ASR") (CSM and ASR are collectively referred to as "Defendants").  Churches' claim for benefits arises out of injuries he suffered on June 4, 2022, when he crashed a Honda CRF 450R motorcycle (the "Honda") he was riding on private property and sustained bodily injury.  His claim was ultimately denied

---

[1] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c).  (ECF No. 41).

pursuant to a Plan provision that generally excludes accidents involving only a "Motorcycle" (defined in terms of its number of wheels and engine size) and no other motor vehicle. Given that the Honda is unquestionably a motorcycle, if the Plan's general exclusion applies, Churches' claim was properly denied. But the Plan has an exception such that if the involved motorcycle is "commonly recognized as an 'off-road vehicle,'" then it "shall not be deemed to be a Motorcycle," and the exclusion would not apply. Thus, if this off-road vehicle exception applies to the Honda, Churches' claim for benefits was improperly denied.

The parties filed cross-motions for judgment on the Administrative Record[2] (ECF Nos. 30, 31, 32), as well as response briefs in further support of their respective positions (ECF Nos. 36, 37, 38). The Court held oral argument on November 2, 2023.

For the reasons set forth below, the Court will grant Churches' motion and deny Defendants' motions.

I.    **Background**

A.    ***Churches' Accident and Medical Expenses***

At the time of the events in question, Churches was a 26-year-old employee of CSM and a participant in the Plan. (ECF No. 32, PageID.1142). CSM is the named fiduciary and Plan Administrator of the Plan.[3] (PageID.892). As the Plan Administrator, CSM has

---

[2] The administrative record is contained within ECF No. 29-1, PageID.699-1064 (the "Administrative Record"). For ease, standalone references to "PageID.__" will refer to the pages within the Administrative Record.

[3] As reported on CSM's Form 5500 Annual Report of Employee Benefit Plan for the 2022 plan year, the Plan is self-funded; in other words, it is a single-employer plan funded by the general assets of the company itself. (PageID.1043-64).

"the discretionary authority to decide all questions of eligibility for participation and eligibility for benefit payments and to determine the amount and manner of payment of benefits." (PageID.989). CSM contracted with ASR to process claims made under the Plan, and as the Plan's Claim Administrator, ASR is not a fiduciary and only has the responsibilities delegated to it in writing. (PageID.892).

On June 4, 2022, Churches suffered a compound fracture of his left ankle while riding the Honda on a friend's property. According to the police report entitled "DIRTBIKE PI," Churches had been riding a friend's "dirt bike" when he crashed, causing his injury. (PageID.768-69). The police report notes that no other vehicles were involved in this "dirt bike crash." (*Id.*). Churches was transported to Allegiance Hospital, where he was admitted and underwent a series of surgeries over the course of a five-day in-patient stay. (*Id.*, *see also* ECF No. 32, PageID.1143). After being discharged, Churches underwent physical rehabilitation and regularly followed up with orthopedic specialists. (PageID.759-61). Churches alleges that to date, the medical expenses at issue exceed $260,000. (PageID.734).

### B.    *The Plan's Relevant Provisions*

#### 1.    *The Plan's Motorcycle Accident Exclusion*

The Plan contains, in three separate places, an exclusion for motorcycle accidents that do not involve motor vehicles. First, on page 19, the Plan states:

> **If a Covered Person is injured in an accident that does not involve a Motor Vehicle, this Plan will not pay any benefits for Injuries received in an accident involving a Motorcycle as defined in the Plan. It is the responsibility of any Covered Person who rides a Motorcycle as either an operator or a passenger to ensure that he**

3

**or she is covered under a Motorcycle insurance policy that will provided [sic] health benefits in the event of a Motorcycle accident. If a Covered Person fails to maintain Motorcycle insurance, he or she will not have any health expense coverage for Motorcycle-related injuries. This requirement applies even if the Covered Person is not legally required to have such health benefit coverage.**

(PageID.910) (emphasis in original).

Next, on page 42, the Plan states:

Charges for Motorcycle-related claims if a Covered Person is injured in an accident that involves a Motorcycle but that does not involve a Motor Vehicle. IF A COVERED PERSON IS INJURED IN AN ACCIDENT THAT DOES NOT INVOLVE A MOTOR VEHICLE, THIS PLAN WILL NOT PAY ANY BENEFITS FOR INJURIES RECEIVED IN AN ACCIDENT INVOLVING A MOTORCYCLE AS DEFINED IN THE PLAN. It is the responsibility of any Covered Person who rides a Motorcycle as either an operator or a passenger to ensure that he or she is covered under a Motorcycle insurance policy that will provided [sic] health benefits in the event of a Motorcycle accident. If a Covered Person fails to maintain Motorcycle insurance, he or she will not have any health expense coverage for Motorcycle-related injuries. This requirement applies even if the Covered Person is not legally required to have such health benefit coverage.

(PageID.933) (capitalization original).

Finally, on page 72, the Plan states:

If a Covered Person is injured in an accident that does not involve a Motor Vehicle, this Plan will not pay any benefits for Injuries received in an accident involving a Motorcycle as defined in the Plan. It is the responsibility of any Covered Person who rides a Motorcycle as either an operator or a passenger to ensure that he or she is covered under a Motorcycle insurance policy that will provided [sic] health benefits in the event of a Motorcycle accident. If a Covered Person fails to maintain Motorcycle insurance, he or she will not have any health expense coverage for Motorcycle-related injuries. This requirement applies even if the Covered Person is not legally required to have such health benefit coverage.

(PageID.963).

2.     *The Plan's "Motorcycle Definition Provision"*

The Plan's "Definitions" section provides, in relevant part:

> The term "Motorcycle" means a two- or three-wheeled vehicle that is equipped with a motor that exceeds 50 cubic centimeters (cc) engine displacement.  The number of wheels on any attachment to the vehicle will not count toward the number of wheels on the vehicle.  A vehicle that is commonly recognized as an "off-road vehicle" (ORV) or "all-terrain vehicle" (ATV) shall not be deemed to be a Motorcycle, nor will the off-road operation of a Motorcycle cause it to be deemed instead an ORV or ATV.

(PageID.1006) (the "Motorcycle Definition Provision").

Thus, the Motorcycle Definition Provision has two components that are relevant here: its first sentence defines what constitutes a "Motorcycle" under the Plan (the "Motorcycle Definition"), while its last sentence provides an exception to that definition (the "ORV Exception").[4]  It is noteworthy that the Plan does not define the terms "off-road vehicle" or "ORV."  Nor does it explain what is meant by the phrase "commonly recognized."

**C.     Churches Applies for Benefits and Coverage is Denied**

On June 4, 2022, Churches made a claim for payment of medical bills under the Plan.  (PageID.715).  His claim was initially denied by ASR, with ASR explaining the denial solely as follows: "Motorcycle accident-related injuries are excluded under this plan.  See the Motorcycle Accident-Related Claims Exclusion section of the plan document."

---

[4] CSM focuses much of its argument on the second part of the last sentence – "nor will the off-road operation of a Motorcycle cause it to be deemed instead an ORV or ATV."  But, as discussed below, *see infra* at 16-17, that portion of the Motorcycle Definition Provision is irrelevant to the parties' dispute.

(PageID.759-65).   ASR did not mention the ORV Exception but did ask Churches to "[p]lease submit a copy of the police report" (*id.*), which, as noted above, described the Honda as a "dirt bike."   Churches appealed the denial of benefits twice, each time specifically raising the Plan's ORV Exception, but the denial was affirmed both times.

In the first level appeal, dated August 8, 2022, Churches specifically contended that he was injured "in a dirt bike accident" or "an ORV accident" and that because "the plan excludes ORVs from the definition of 'Motorcycle,' reimbursement is owed and the decision to deny benefits must be reversed."  (PageID.756-57).   Churches provided the State of Michigan's definition of an ORV under the Michigan Off-Road Vehicle Act, MCL 324.81101, *et seq.*, and, as evidence that the Honda is an ORV, he directed ASR to the following Honda website: https://powersports.honda.com/off-road/competition/crf450r. (PageID.756) (the "450R Off-Road Link").[5]

On September 12, 2022, ASR – acting as CSM's agent – affirmed the denial of benefits, stating "[n]o benefits are payable under the Plan because the Plan excludes Motorcycle Accident-Related Claims …."  (PageID.709).   ASR's letter quoted from the Plan's Motorcycle Definition Provision, but only its Motorcycle Definition.  (*Id.*).   ASR then noted that the 450R Off-Road Webpage "states that [the Honda] is equipped with a 450 cc engine," and found, therefore, that Churches' claim was properly denied "pursuant to the Plan's definition of motorcycle and its exclusion of motorcycle accident-related

---

[5] The actual webpage associated with the 450R Off-Road Link was not copied and included in the Administrative Record.  However, the Court will refer to that webpage as the "450R Off-Road Webpage."

6

claims." (PageID.710). In other words, despite the fact that Churches' appeal had expressly invoked the Motorcycle Definition Provision's ORV Exception, ASR simply ignored it.

Not surprisingly, therefore, on October 11, 2022, Churches submitted a second level appeal, arguing that, in denying benefits, ASR "arbitrarily ignore[d]" "the ORV exception in the plan definition of motorcycle" and that, by doing so, "all participants and beneficiaries" are left "uninsured for injuries sustained while operating an ORV." (PageID.703, 705). Churches further contended: (1) "[a]s evidenced by the police incident report, [he] was operating an off-road Honda CRF450R 'dirt bike' at the time of the accident"; (2) the "dirt bike … was not registered for use on a public road and was not insured under the Michigan No-Fault Act"; (3) the No-Fault Act "*excludes* ORVs from the definition of motorcycle and does not require that ORVs be registered for use on a public highway or insured under [the] Act"; (4) the "dirt bike operated by Mr. Churches falls within the definition of an ORV under the *Michigan Off-Road Vehicle Act*"; and (5) "the plan expressly *excludes* ORVs from the definition of motorcycle[.]" (PageID.704) (emphasis in original) (footnotes omitted).

On November 11, 2022, CSM issued a Final Claim Decision,[6] denying Churches' claim for benefits, explaining:

> In your appeal letter, you state that the police incident report indicates Mr. Churches was operating an off-road Honda CRF450R "dirt bike" at the time of the accident. However, the police report does not define

---

[6] Although there initially was some dispute as to whether ASR or CSM was the final decisionmaker, Churches conceded at oral argument that CSM made the final decision to deny his claim for benefits.

or determine the type of vehicle Mr. Churches was operating, i.e., whether an ORV, dirt bike, or motorcycle.  The Honda CRF450R is equipped with a motor that exceeds 50 cubic centimeters (cc) engine displacement and is commonly recognized as a motorcycle and not an ORV.[1]  Simply because Mr. Churches drove the motorcycle on a nonpublic road does not make it an ORV.

---

[1] See https://powersports.https://powersports.honda.com/motorcycle/motocross/crf450rhonda.com/motorcycle/motocross/crf450r and Honda CRF450R – Wikipedia.

(PageID.745) (footnote in original).  The Court will refer to the first cited link as the "Honda Link"[7] and the second one as the "Wikipedia Link."  However, as with the 450R Off-Road Link, the webpages associated with the Honda Link and the Wikipedia Link were not copied and included in the Administrative Record.[8]

On December 15, 2022, Churches filed suit in this Court to recover benefits under ERISA.

## II.  Standard of Review

The Court must first decide what standard of review applies – "arbitrary and capricious" (as Defendants argue) or "*de novo*" (as Churches argues).  The default rule in ERISA cases is that courts review an administrator's denial of benefits *de novo*.  *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).  "But, if the

---

[7] The Honda Link contained in CMS' denial letter repeats itself and is clearly incorrect.  To the extent the Court further references the "Honda Link," it will be to https://powersports.honda.com/motorcycle/motocross/crf450r, which the parties seem to agree is the correct web address.

[8] To the extent the Court discusses the webpages associated with the Honda Link and the Wikipedia Link, it will refer to them as the "Honda Webpage" and the "Wikipedia Webpage," respectively.  The Court also notes that when one types the 450R Off-Road Link into the web browser address bar, it jumps immediately to the Honda Webpage.  In other words, the 450R Off-Road Webpage and the Honda Webpage are the same.

plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'" then such decisions are reviewed "under the arbitrary-and-capricious standard." *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 264 (6th Cir. 2018) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

Here, Defendants argue that the arbitrary and capricious standard applies because, per the Plan, CSM is the Plan Administrator and, in that capacity, is "charged with the administration of the Plan." (PageID.892, 989). The Plan gives CSM "the discretionary authority to decide all questions of eligibility for participation and eligibility for benefit payments and to determine the amount and manner of payment of benefits." (PageID.989). "Further, the Plan Administrator shall have the discretionary authority to construe and interpret the terms of the Plan, including the right to remedy possible ambiguities, inconsistencies, or omissions." (*Id.*).

Churches disputes Defendants' position that the applicable standard of review is arbitrary and capricious, arguing that the default standard of review – *de novo* – should be applied for several reasons.[9] (ECF No. 32, PageID.1145-47; ECF No. 38, PageID.1252-

---

[9] For example, Churches argues that the discretionary authority granted to the Plan Administrator (CSM) does not extend to benefit determinations made by the Claims Administrator (ASR), and "any authority delegated by the Plan Administrator must be made in writing." (ECF No. 38, PageID.1254-55) (citing PageID.892). Churches claims that the Administrative Record does not include evidence that CSM delegated its authority to ASR, and, in arguing that such delegation was made, CSM improperly relies on a document that is not part of the Administrative Record (the "Administration Agreement" between CSM and ASR). (ECF No. 37-3). While the parties disagree as to whether, under the particular circumstances of this case, the Court may consider the contents of the Administration Agreement, such disagreement need not be resolved, as the Court is not relying on that document in reaching its ultimate conclusion.

57).  Ultimately, however, determination of which standard of review applies is not critical to resolving the parties' competing motions because CSM's decision to deny benefits fails to pass muster even under the more deferential arbitrary and capricious standard.

## III.  Analysis

Applying the arbitrary and capricious standard, the Court "must uphold an administrator's benefits decision" where it is based on a "deliberate, principled reasoning process" and "supported by substantial evidence."[10]  *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022) (internal quotations omitted).  Arbitrary and capricious review is "extremely deferential" and "the least demanding form of judicial review."  *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (internal quotations omitted).  However, even with the high deference, "federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions."  *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).  Ultimately, though, the burden is on Churches to prove that the Plan Administrator's decision was arbitrary or capricious.  *See Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir. 2011).

---

[10] The conflict of interest inherent in self-funded plans (such as the one at issue) does not alter the standard of review but should be taken into account as a factor in determining whether the decision was arbitrary and capricious.  *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998).  Here, there is a conflict of interest because CSM "pay[s] all benefits and expenses of the Plan from its general assets" and "does not establish a separate fund for the payment of Plan benefits." (PageID.892).  While that weighs in Churches' favor, even if no such conflict of interest existed, the Court's substantive analysis would be the same.

### A.   The Denial of Churches' Claim Was Not Based on a "Deliberate, Principled Reasoning Process"

The Motorcycle Definition Provision's first sentence defines a motorcycle as "a two- or three-wheeled vehicle that is equipped with a motor that exceeds 50 cubic centimeters (cc) engine displacement." (PageID.1006). A mere two sentences later, however, the Provision's ORV Exception explains that, notwithstanding that definition, "[a] vehicle that is commonly recognized as an 'off-road vehicle' (ORV) … shall not be deemed to be a Motorcycle …." (*Id.*). The record demonstrates that Defendants' ultimate determination that the Plan's ORV Exception did not apply was not based on a "deliberate, principled reasoning process."

First, as shown above, *see supra* at 5-7, ASR's two preliminary denials of Churches' claim did not even recognize the ORV Exception.[11] ASR's second denial failed to do so even after Churches expressly raised the ORV Exception in his appeal of the first denial. *See supra* at 6-7. And, in rejecting Churches' first appeal, ASR quoted the Motorcycle Definition Provision's first sentence which contains the Motorcycle Definition – but *omitted* the Provision's last sentence, which contains the ORV Exception. (PageID.709). This conscious failure to consider the applicability of an exception to the definition on which ASR was relying – particularly when both the definition and exception are contained

---

[11] This is consistent with early internal ASR employee notes and e-mails that focused solely on whether the Honda met the Plan definition of a "Motorcycle" in terms of its number of wheels and engine size, while ignoring the ORV Exception that applies if the motorcycle is "commonly recognized" as an ORV. (*See, e.g.*, PageID.713 ("While a person may call a two wheeled vehicle a 'dirt bike,' it is the CC's of the engine that determine if the vehicle is a motorcycle as defined by the Plan. This person's bike was 450 cc's and therefore, it is a 'motorcycle' as defined by the Plan."); PageID.718 ("Per accident form, the bike was 450 cc's. This makes the bike a 'motorcycle' as defined by the plan, and injuries are excluded.")).

in the same provision – belies a "deliberate, principled reasoning process."

Later internal e-mail correspondence between ASR and CSM employees and representatives involved in evaluating Churches' claim similarly reflect a refusal to recognize and meaningfully analyze the ORV Exception's application.  When discussing this provision on September 15, 2022, after ASR had issued its second denial, Cindy Marsh ("Marsh")[12] e-mailed Maggie Tueth ("Tueth") asking for "talking points" she could use when discussing the denial with Churches' attorney:

> . . . I know [Churches'] attorney will say the 'bike' [Churches] was driving is not a Motorcycle because it was an ORV.  He isn't focusing on the first sentence that says 'The Term 'Motorcycle' means a two- or three-wheeled vehicle that is equipped with a motor that exceeds 50 cubic centimeters engine displacement.
>
> The attorney is focusing on the last sentence [i.e., the ORV Exception] and he is saying … that an ORV shall not be deemed to be a Motorcycle ….
>
> The agent referred to the vehicle in the accident as a 'dirt bike', but **since the CC's were greater than 50, we treated this as a Motorcycle**.

(PageID.737) (emphasis added).

Thus, Marsh's e-mail shows that she interpreted the Motorcycle Definition Provision as meaning that if a "two- or three-wheeled vehicle" has a "motor that exceeds 50 cubic centimeters (cc)," then it is a "Motorcycle" under the Motorcycle Definition Provision's Motorcycle Definition, **_and_ the Motorcycle Definition Provision's ORV Exception does not apply regardless of the vehicle's common recognition as an ORV**. But that is clearly an incorrect and unreasonable interpretation of the Motorcycle Definition

---

[12] Although Marsh used an ASR e-mail address, CSM agrees that it was Marsh who "issued the Final Claim Decision 'on behalf of' CSM."  (ECF No. 36, PageID.1177; PageID.856-57).

Provision.  Indeed, the entire point of the ORV Exception is to make clear that a vehicle that meets the Motorcycle Definition will *nevertheless* "not be deemed to be a Motorcycle" if it is "commonly recognized" as an ORV.  In other words, under the Motorcycle Definition Provision, a vehicle's common recognition as an ORV trumps the fact that it is a "Motorcycle" under the Plan's Motorcycle Definition, rather than the other way around, as Marsh analyzed the Provision.

Tueth responded later that same day by offering Marsh four talking points to be conveyed to Churches' counsel, *none* of which relate to the ORV Exception:

> I would communicate the following points:
>
> • ASR must process claims according to the plan document as written, including abiding by all exclusions and definitions, even though we review all information provided by claimants.
>
> • The plan clearly excludes coverage for injuries sustained in a motorcycle-related accident if a motor vehicle is not involved. This exclusion defers to the plan's definition of a motorcycle.
>
> • The first sentence of the plan's definition of motorcycle clearly states a "two- or three-wheeled vehicle that is equipped with a motor that exceeds 50 cubic centimeters engine displacement." Both the accident report submitted to ASR by Levi Churches and the Website for the vehicle in question designate the vehicle as 450 cubic centimeters.
>
> • Vehicles that meet the cc requirement are considered motorcycles under the plan even if driven off road (also included in the definition).

(PageID.736).

Tueth did go on to at least recognize the ORV Exception's existence, but offered no analysis whatsoever as to why it would not apply to the Honda.  In fact, to the extent Tueth

noted any information related to the ORV Exception, it favored a finding that the ORV

exception *should* apply:

> Note that the Website for the vehicle in question does ***identify it
> under the off-road category*** ….   Again, I would point out that
> while ASR reviews all pertinent information received, we have to
> use the plan language as the measuring stick for all claim
> decisions.   I do not think we can say this vehicle is commonly
> recognized as an off-road vehicle, but admittedly, that point is
> nebulous.

(*Id.*) (emphasis added).

On October 14, 2022, Marsh wrote back to Tueth, completely ignoring the Plan's

ORV Exception and Tueth's notation about the Honda being identified under the

"Website's" "off-road" category, and returning to her flawed interpretation that the

Motorcycle Definition trumps the ORV Exception: "[Churches] was seriously injured

riding a 'dirt bike' that meets our definition of a Motorcycle.  The Plan excludes coverage

for injuries suffered while operating a Motorcycle."  (PageID.740).  The matter was then

sent to legal counsel.  (*Id.*).

On November 11, 2022, CSM (via a letter from Marsh) issued its Final Claim

Decision denying Churches' claim for benefits.  (PageID.856-57).  CSM did not address

the fact that Churches' counsel had provided the 450R Off-Road Link, or that CSM's own

review of the 450R Off-Road Webpage revealed that it "does identify [the Honda] under

the off-road category …."  (PageID.736).  Instead, CSM focused on the fact that the Honda

met the Motorcycle Definition because it had a "motor that exceeds 50 cubic centimeters,"

but then asserted, in wholly conclusory fashion, that the Honda "is commonly recognized

as a motorcycle and not an ORV."  (PageID.745).  In support of that assertion, CSM merely

*cited* the Honda Link and the Wikipedia Link without mentioning a single word about any particular content of the related Honda Webpage or the Wikipedia Webpage. (*Id.*). In short, CSM's conclusion that the Honda is not "commonly recognized" as an ORV was not supported by *any* actual reasoning.

CSM was also vague in its motion on this issue, never actually making clear what evidence it contends supports its determination that the Honda was not "commonly recognized" as an ORV, and instead making only a bald reference to "Wikipedia" and "Honda" "categoriz[ing] the CRF450R as a 'motorcycle.'" (ECF No. 30, PageID.1073-74; *see also* PageID.1085 ("CSM's decision that a Honda CRF450R is not 'Commonly Recognized' as an ORV is supported by substantial evidence, because multiple websites— including Honda itself—recognize the Honda CRF450R as a motorcycle ...."); PageID.1087 ("both Honda's website and Wikipedia categorize the CRF450R as a 'motorcycle' and do not categorize it as an ORV").[13]  At any rate, CSM's argument misses

---

[13] Part of the challenge with this case is that copies of the Wikipedia Webpage and the Honda Webpage were not made part of the Administrative Record, and CSM never discusses the *contents* of either webpage. ASR attached to its motion a copy of the Wikipedia Webpage and what purports to be the "specifications" page that can be accessed by clicking a tab on the Honda Webpage. (ECF Nos. 31-2, 31-3). Interestingly, that makes the specifications page the type of "once-removed" evidence that CSM argued at the hearing is *not* part of the Administrative Record. For his part, Churches argued in his brief that the Court should "disregard" both the specifications page and the Wikipedia Webpage because neither was copied and included in the Administrative Record. (ECF No. 38, PageID.1256-57). Moreover, ASR did not attach the actual Honda Webpage to its motion, while Churches did attach it to his response brief, asserting, "if the Court considers the Honda website in its analysis, it should consider the entire website which clearly depicts the subject dirt bike as an off-road vehicle." (ECF No. 38, PageID.1257, 1264-96). At the conclusion of oral argument, Churches' position seemed to be that the Court should consider the Honda Webpage. As explained below, *see infra* at 18, n.14, to ensure all of the bases are covered, the Court will analyze the salient issues both with and without reference to the content of the webpages.

the mark because, as explained above, *see supra* at 12-13, the mere fact that the Honda is a "Motorcycle" under the Plan's Motorcycle Definition is irrelevant to the question of whether it is also "commonly recognized" as an ORV.

CSM's interpretation of the Motorcycle Definition Provision is clearly flawed in one other important respect.  CSM repeatedly focuses on the portion of the Provision that provides, "nor will the off-road operation of a Motorcycle cause it to be deemed instead an ORV or ATV," arguing, "[i]n other words, function does not determine categorization." (*See, e.g.*, ECF No. 30, PageID.1084; ECF No. 36, PageID.1188, 1190; PageID.857 (Final Denial Notice stating, "Simply because Mr. Churches drove the motorcycle on a nonpublic road does not make it an ORV.")).  CSM makes this argument in response to Churches' pre-final decision correspondence explaining that the Honda "is an off-road vehicle (ORV) under the Michigan Off-Road Vehicle Act, MCL 324.81101, et seq," (the "Act") which provides: "'ORV' … means a motor-driven off-road recreation vehicle capable of cross-country travel without benefit of a road or trial, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain."  (PageID.756).  A copy of the salient section of the Act is contained in the Administrative Record.  (PageID.770).

CSM's assertion that "function does not determine categorization" doesn't properly characterize the provision in question.  Actually, a vehicle's *intended function* very much determines its categorization; a more accurate characterization of the provision would be, "use does not itself determine categorization."  In other words, the mere fact that a person is riding on a dirt track a motorcycle that is not designed or built for off-road riding "does not make it an ORV," or, in the words of the Motorcycle Definition Provision, does not

16

"cause it to be deemed [] an ORV …."  Moreover, Churches never argued that the Honda should be deemed an ORV *because* he was riding it off-road.  Rather, his argument has always been that, without reference to how he was actually using the Honda at the time of the accident, it *is* an off-road vehicle and is commonly recognized as such.

For all of the foregoing reasons, CSM's determination that the Honda was not commonly recognized as an ORV was not based on a "deliberate, principled reasoning process."

**B.    *CSM's Ultimate Determination that the Honda is Not "Commonly Recognized" as an ORV is Arbitrary and Capricious and Not Supported by Substantial Evidence***

Even if Defendants' approach to addressing the salient question of whether the Honda is "commonly recognized" as an ORV were not so fundamentally flawed, Churches would still prevail.  Under the deferential arbitrary and capricious standard, a decision "will pass muster … if a rational person could conclude that the evidence was adequate to justify" it.  *Autran*, 27 F.4th at 412 (internal quotations omitted).  In performing this review, a court is limited to the evidence in the administrative record.  *See Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).  Here, CSM's ultimate determination that the Honda is not commonly recognized as an ORV is arbitrary and capricious and is not supported by substantial evidence.

CSM's vague reasoning as to the "categorization" of the vehicle by Honda and Wikipedia, *see supra* at 15, could mean one of only two things: either (1) CSM is relying on the strict Administrative Record, *i.e.*, PageID.699-1064, in which case, CSM is referring only to the text of the Honda Link and Wikipedia Link themselves, and not their associated

webpages (which are not contained within the Administrative Record); or (2) CSM is relying on the Administrative Record **and** the Links' associated webpages – the Honda Webpage and the Wikipedia Webpage – even though neither webpage was copied and included in the Administrative Record or specifically discussed in CSM's denial letter or motion papers.[14]  Under either approach, Churches prevails.

### 1. Analysis under the Strict Administrative Record

To the extent CSM argues that the Court should make its decision based strictly on the 366-page Administrative Record on the docket in this case (ECF No. 30, PageID.1086-87), the only actual evidence it points to in support of its conclusion that the Honda is not commonly recognized as an ORV is the text of the Wikipedia Link and the Honda Link. (*Id.*, PageID.1087) (citing PageID.857).  The Wikipedia Link, "Honda CRF 450R – Wikipedia," contains no verbiage about the Honda's "common recognition" as an ORV one way or the other, and thus cannot provide "substantial evidence" in support of CSM's denial.

The Honda Link, "https://powersports.honda.com/motorcycle/motocross/crf450r," particularly when read in conjunction with the rest of the Administrative Record, is in Churches' favor.  While the Honda Link contains the word "motorcycle," as explained above, that is irrelevant to the question of whether the ORV Exception applies, because meeting the Plan's Motorcycle Definition is *a necessary predicate* for that Exception to

---

[14] The parties' dispute over the Administrative Record's contents, *see supra* at 15 n.13, CSM's vague discussion of the "evidence," and the principle that the Court's review is limited to the evidence in the administrative record, *Yeager*, 88 F.3d at 381, requires the Court to bifurcate its analysis in this unorthodox fashion.

apply, not a reason to find it does not apply.

The Honda Link references "motocross," which indicates that the Honda is a particular type of motorcycle. And, while CSM made no effort to analyze the "motocross" term, the Administrative Record includes information as to the type of motorcycle the Honda is; Churches' letter referenced the 450R Off-Road Link, which contains the phrase, "off-road," and Tueth had specifically told Marsh that "the Website for the [Honda] does identify it under the off-road category[.]" (PageID.736, 756). Finally, the record includes a third-party police report that referred to the Honda as a "dirt bike." (PageID.768-69).[15]

Thus, at a minimum, looking strictly at the Administrative Record, it does not provide substantial evidence in support of CSM's determination that the Honda is not commonly recognized as an ORV. Rather, between the 450R Off-Road Link, Tueth's e-mail referencing the Honda Website, and the police report, the Administrative Record contains sufficient evidence for the Court to find that the Honda is commonly understood to be an ORV.

---

[15] CSM argues that Churches "did not offer any evidence" as to whether the Honda is commonly recognized as an ORV, and "[i]nstead, [] repeatedly advanced the definition of an ORV from the No-Fault Act. The closest he came to offering evidence on this issue was citing Honda's website [the 450R Off-Road Link] for a different proposition …." (ECF No. 30, PageID.1087) (citing PageID.756). This is simply incorrect. First, Churches noted that the police report referred to the Honda as a "dirt bike," which suggests the responding officer understood it to be a vehicle intended to be used off-road. (PageID.704). While, as ASR contends, the report itself is not dispositive of the issue (PageID.745), ASR was not entitled to simply ignore its consistency with other information in the Administrative Record. Second, the fact that Churches cited the 450R Off-Road Link in connection with a sentence about the Honda being an ORV "under the Michigan Off-Road Vehicle Act," does not mean the Link was not also more generally offered to demonstrate that the Honda was, substantively speaking, an "off-road" vehicle. Indeed, the Link, which itself has nothing to do with the Act, has the phrase "off-road" in it.

2.     *Analysis under the Administrative Record* and *the Honda Webpage and Wikipedia Webpage*

In arguing that "the Honda CRF450R fits squarely within the Plan's definition of motorcycle," and that "the Plan defines an ORV as a vehicle that is 'commonly recognized' as an ORV," CSM specifically notes that "[b]oth Wikipedia and Honda itself categorize the CRF450R as a 'motorcycle.'"  (ECF No. 30, PageID.1073-74).  Since nothing in the Wikipedia Link – "Honda CRF 450R – Wikipedia" – suggests any particular "categorization" of the Honda, CSM appears to be asking the Court to consider – in addition to the information just discussed that is contained within the Administrative Record – the *contents* of the Honda Webpage and the Wikipedia Webpage, even though neither is contained within the Administrative Record.[16]  However, doing so only makes Churches' case stronger.

For example, when the Honda Webpage opens, one sees photos of racers riding Honda CRF 450Rs on off-road, rural dirt tracks.  In the few photos of riders not actually *on* a dirt track, it is because the rider and his Honda CRF 450R are flying through the air, in one case many feet above, and tilted almost 90° so his body and dirt bike are parallel to, the dirt track, with rugged hilly terrain in the background.[17]  One thing not visible in any

---

[16] At oral argument, when being questioned about the Wikipedia Webpage, CSM's counsel responded, "This specific page was cited.  This specific page is part of the record."  He argued, however, that other webpages referenced in the Wikipedia Webpage that could be accessed by hyperlink could not be considered.  The Court concurs with that latter point and in this portion of its opinion will only consider the contents of the Honda Webpage and the Wikipedia Webpage, *i.e.*, that which can be viewed without clicking any additional links or tabs on those webpages.

[17] Many of these photos appear to be the same ones that Churches attached as exhibits to his response brief.  (ECF No. 38, PageID.1267-70).

of the photos?  A road.  The Honda Webpage also makes clear that the term "motocross" is associated with the type of off-road races reflected in the photos.  In short, any reasonable person who opened the Honda Webpage would immediately and unequivocally conclude that the Honda is an off-road vehicle in every sense of the term.  Accordingly, the Honda Webpage overwhelmingly supports a finding that the Honda is "commonly recognized" as an ORV.

The Wikipedia Webpage, particularly considered alongside the other evidence discussed herein, supports the same finding.  That webpage describes the Honda CRF 450R as "a four-stroke racing *motocross* motorcycle" and contains a link to the "Honda *Offroad* Motorcycle Timeline" (emphasis added), again making clear that the Honda CRF 450R is an ORV.

For all of these reasons, even applying the "extremely deferential" arbitrary and capricious standard of review, *see McClain*, 740 F.3d at 1064, CSM's determination that the Honda is not "commonly recognized" as an ORV under the Plan cannot stand.  That determination is not the product of a "deliberate, principled reasoning process" and is not "supported by substantial evidence."  *Autran*, 27 F.4th at 411.  Rather, Defendants acted arbitrarily and capriciously in making that determination.  *See, e.g., Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 549 (6th Cir. 2015) ("An administrator acts arbitrarily and capriciously when it engages in a selective review of the administrative record to justify a decision to terminate coverage.") (internal quotations omitted); *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007) (decision-making process – in which plan administrator "focused on slivers of information that *could* be read to support

a denial of coverage" and ignored evidence to the contrary – was "not deliberate or principled") (italics in original).   The record, whether construed as only the strict Administrative Record, or the Administrative Record plus the Honda Webpage and the Wikipedia Webpage, establish that the Honda is commonly recognized as an ORV.

### 3.   Remedy

When a benefits plan is found to have acted arbitrarily and capriciously, a court has two options: award benefits to the claimant or remand to the Plan Administrator.  *See Shaw*, 795 F.3d at 551.  The Sixth Circuit has adopted the rule that "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator."  *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) (internal quotations and brackets omitted).   Indeed, the Sixth Circuit has also explained that "[p]lan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits.  They need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable."  *Cooper v. Life Ins. Co. of N.A.*, 486 F.3d 157, 172 (6th Cir. 2007).

In this case, although CSM's decision-making process was unquestionably fundamentally flawed, for all of the reasons set forth above, Churches was denied benefits to which he is clearly entitled.  *Cf. Elliott*, 473 F.3d at 622 ("In this matter, we cannot say that Elliott is clearly entitled to benefits.").   Remand would be a useless formality and would further unduly delay Churches' receipt of the significant benefits to which he is

clearly entitled. Thus, an award of benefits is appropriate. *See Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 513 (6th Cir. 2005) (concluding that the appropriate remedy was an immediate award of benefits); *Cooper*, 486 F.3d at 171-73 (same).

## IV.    Conclusion

For the foregoing reasons, **IT IS ORDERED** that Churches' Motion to Reverse Administrator's Decision **(ECF No. 32)** is **GRANTED**, ASR's and CSM's Motions to Affirm the Administrator's Denial of Benefits **(ECF Nos. 30, 31)** are **DENIED**, and the benefits decision made by CSM is **REVERSED**. Consistent with this Opinion and Order, CSM shall provide Churches with the benefits to which he is entitled under the Plan stemming from his June 4, 2022 accident.[18]

**IT IS FURTHER ORDERED** that if Churches wishes to request an award of attorney's fees, such request, along with documentation in support, must be filed within 21

---

[18]  Churches also alleges in his complaint that he is entitled to $100 per day in damages, pursuant to 29 U.S.C. § 1132(c)(1)(B), because Defendants did not produce the Plan's latest annual report (Form 5500) upon request. (ECF No. 1, PageID.3, 5). Although CSM does not address this issue in its briefing, ASR cites law for the proposition that courts have refused to impose this penalty (or have limited the penalty to a nominal amount) absent a showing of prejudice or bad faith. (ECF No. 31, PageID.1115-19). And, while ASR admits that the Form 5500 was produced 176 days late, it argues that Churches' request for this form was "simply overlooked" (and, thus, there was no bad faith). (*Id.*). It also argues that there was no prejudice, as the form was available to Churches online at any time, and it merely confirmed what Churches already knew – that the Plan is 100% self-funded by CSM. (*Id.*). Given these facts, the Court will exercise its discretion to decline to impose a penalty for this technical violation of the statute. *See, e.g., Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 432 (6th Cir. 2007) (declining to impose penalty where delay in production "resulted at most from good-faith mistakes" and there was no prejudice to the plaintiff); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994) (recognizing that many courts have refused to impose any penalty at all under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith) (citing cases).

days of the day this Order issues, and Defendants may respond within 14 days thereafter.

All outstanding claims in this matter having been fully resolved, this case is hereby

**DISMISSED WITH PREJUDICE**.  The Court will retain jurisdiction to consider any

request by Churches for an award of reasonable attorney's fees.

**IT IS SO ORDERED.**

Dated: February 15, 2024                      s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 15, 2024.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager